_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
                     COUNSEL/PARTIES OF RECORD

JAN 1 0 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

DAYLE ELIESON
United States Attorney
PATRICK BURNS
Assistant United States Attorney
Nevada State Bar #: 11779
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336 / FAX: (702) 388-6418
John.P.Burns@usdoj.gov

*Representing the United States of America*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>**CAMILO Q. PRIMERO,**<br><br>**Defendant.** | **Case No.: 2:17-cr-00205-APG-GWF**<br><br>**PLEA AGREEMENT** |

The United States, by and through the undersigned, and the Defendant, CAMILO Q. PRIMERO, and his attorneys, JEFFREY B. SETNESS, ESQ., and WILLIAM MCMURREY, ESQ., respectfully submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

## I.   SCOPE OF AGREEMENT

The parties to this Plea Agreement are the United States and the Defendant, CAMILO Q. PRIMERO. This Plea Agreement binds the Defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution, and forfeiture.

It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the Defendant.

## II.    DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.    <u>Guilty Plea</u>. The Defendant knowingly and voluntarily agrees to plead guilty to the following counts contained in the Indictment filed on July 5, 2017: Count 1, charging Conspiracy to Commit Health Care Fraud, in violation of Title 18, United States Code, Section 1349; and Count 14, charging Money Laundering, in violation of Title 18, United States Code, Section 1957.

The defendant also agrees to the forfeiture of the property, the imposition of the forfeiture on the property, and the imposition of the in personam criminal forfeiture money judgment as set forth in this Plea Agreement and the Forfeiture Allegations of the Criminal Indictment.

B.    <u>Waiver of Trial Rights</u>. The Defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the Defendant is giving up:

1.    The right to proceed to trial by jury on all charges, or to a trial by a judge if the Defendant and the United States both agree;

2.    The right to confront the witnesses against the Defendant at such a trial, and to cross-examine them;

3.    The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4.    The right to testify in his own defense at such a trial if he so chooses;

5.    The right to compel witnesses to appear at such a trial and testify in the

2

1    Defendant's behalf; and

2            6.    The right to have the assistance of an attorney at all stages of such

3    proceedings.

4        C.    <u>Withdrawal of Guilty Plea</u>. The Defendant will not seek to withdraw his guilty

5    plea after he has entered it in court.

6        D.    <u>Dismissal of Charges</u>. After the Court has adjudged a sentence in this case, the

7    government will move to dismiss all remaining charges in the Indictment.

8        E.    <u>Additional Charges</u>. The United States agrees not to bring any additional

9    charges against the Defendant arising out of the investigation in the District of Nevada that

10   culminated in this Plea Agreement or for conduct known to the United States at the time of

11   this Agreement.

12   **III.    ELEMENTS OF THE OFFENSE**

13   **Count 1**:  The elements of Conspiracy to Commit Health Care Fraud in violation of

14   Title 18, United States Code, Section 1349, are as follows:

15       1.    Beginning on or about the dates listed in the Indictment, and continuing to on

16   or about the end date listed in the Indictment, there was an agreement between the defendant

17   and one or more persons to commit the crime of Health Care Fraud, in violation of Title 18,

18   United States Code, Section 1347;

19       2.    The defendant possessed the requisite intent to commit the crime of Health

20   Care Fraud.

21   **Count 14**:  The elements of Money Laundering, in violation of Title 18, United States

22   Code, Section 1957 are as follows:

23       1.    the defendant knowingly engaged or attempted to engage in a monetary

transaction;

2.      the defendant knew the transaction involved criminally derived property;

3.      the property had a value greater than $10,000;

4.      the property was, in fact, derived from a specified unlawful activity; and

5.      the transaction occurred in the United States, special maritime and territorial jurisdiction of the United States, or the defendant's status qualifies under 18 U.S.C. § 1957(d)(2).[1]

**IV.     FACTS SUPPORTING GUILTY PLEA**

A.      The Defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B.      The Defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The Defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C.      The Defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D.      The Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

1.      From on or about January 1, 2012, to on or about July 5, 2017, in the District of Nevada and elsewhere, the Defendant and his codefendant AURORA S. BELTRAN, did unlawfully, willfully and knowingly combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, health care fraud in violation of Title 18, United States Code, Section 1347.

---

[1] *See* Ninth Cir. Manual of Model Jury Instr., Criminal 8.150 (2013 ed.).

4

2.      Defendant and BELTRAN knowingly executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program, Medicare, and to obtain, by false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

3.      Defendant and BELTRAN, knowing that Defendant owned all or more than 5% of and operated Angel Eye Hospice (AEH), Vision Health Care (Vision), and Advent Hospice (Advent), and was barred from participating in Medicare and all federal health care programs in any capacity, concealed Defendant's ownership and operation of AEH, Vision, and Advent from the Center for Medicare and Medicaid Services (CMS) in order to impede, impair, obstruct, and defeat CMS's lawful functions in administering the Medicare program. Among other roles and powers, Defendant exercised in whole and part executive, managerial, directorial, administrative, financial, and strategic control over the operation of AEH, Vision, and Advent.

4.      It was a further part of the conspiracy that 855A enrollment applications and other documents were submitted to Medicare falsely listing other persons, including BELTRAN, as owners, officers, and managing employees of AEH and Vision in order to conceal Defendant's true ownership interest in and control of AEH and Vision. Defendant and BELTRAN also submitted materially false business contracts in connection with these enrollment applications.

5.      It was a further part of the conspiracy that Defendant and BELTRAN caused Medicare claims to be submitted on behalf of AEH and Vision under provider numbers that were obtained and retained through false representations concerning the ownership and

control of AEH and Vision so that AEH and Vision would receive Medicare payments to which they were not entitled due to Defendant's exclusion from Medicare and all federal health care programs. The Defendant and BELTRAN engaged in fraudulent nondisclosures of Defendant's ownership and control interest.

6.       Defendant and BELTRAN's scheme inflicted at least $1,500,000 in loss to the Medicare program and the United States through fraud.

7.       Defendant and BELTRAN engaged in or caused to be made the following monetary transactions, which they both knew to involve criminally derived property that was the proceeds of a specified unlawful activity, that is Conspiracy to Commit Health Care Fraud and Health Care Fraud, the transactions occurring in the United States:

| Date | Monetary Transaction | Bank Account Drawn On |
|---|---|---|
| 4/12/13 | $50,000 check #: 1142, signed by PRIMERO, made payable to PRIMERO | AEH Bank of America account #: XXXXXXXX9753 |
| 4/15/13 | $100,000 check #: 2106 signed by BELTRAN, made payable to PRIMERO | AEH Bank of America account #: XXXXXXXX9753 |
| 4/15/13 | $50,000 check #: 2258, signed by BELTRAN, made payable to PRIMERO | AEH Bank of America account #: XXXXXXXX9753 |
| 6/17/13 | Withdrawal and purchase of $160,000 cashier's check #: 004221949, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |
| 1/6/14 | Withdrawal and purchase of $20,000 cashier's check #: 001529985, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |
| 1/6/14 | Withdrawal and purchase of $30,000 cashier's check #: 001529986, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |
| 1/6/14 | Withdrawal and purchase of $29,026.78 cashier's check #: 001529987, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |

| Date | Monetary Transaction | Bank Account Drawn On |
|---|---|---|
| 3/5/14 | $100,000 check #:2606, signed by BELTRAN, made payable to PRIMERO | AEH Bank of America account #: XXXXXXXX9753 |
| 8/29/14 | Deposit of a $510,796 check #: 2821 into PRIMERO's personal Bank of America account XXXXXXXX6050 | AEH Bank of America account #: XXXXXXXX9753 |
| 2/5/15 | Withdrawal and purchase of $100,000 cashier's check #:1014401350, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |
| 3/27/15 | Withdrawal and purchase of $100,000 cashier's check #:1014401862, made payable to PRIMERO. | AEH Bank of America account #: XXXXXXXX9753 |
| 4/10/15 | Withdrawal and Purchase of $100,000 cashier's check #: 1014402007, made payable to "Merrill Lynch FBO Camilo Primero." | AEH Bank of America account #: XXXXXXXX9753 |
| 4/10/15 | Withdrawal and Purchase of $100,000 cashier's check #: 1014402008, made payable to "Merrill Lynch FBO Camilo Primero." | AEH Bank of America account #: XXXXXXXX9753 |

8.     The defendant admits the property and the in personam criminal forfeiture money judgment amount listed in Section X are (1) property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of Title 18, United States Code, Section 1347, involving a Federal health care offense as defined in Title 18, United States Code, Section 24; and Title 18, United States Code, Section 1349; (2) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1347, a specified unlawful activity as defined in Title 18, United States Code, Section 1956(c)(7)(F), involving a Federal health care offense as defined in Title 18, United States Code, Section 24, or Title 18, United States Code,

7

Section 1349, conspiracy to commit such offense; (3) any property, real or personal, involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 1957, or any property traceable to such property; (4) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1957, a specified unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense; and (5) any property, real or personal, involved in violations of Title 18, United States Code, Section 1957, or any property traceable to such property, and are subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7); Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(A) and 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 982(a)(1); and Title 21, United States Code, Section 853(p).

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the Defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the Defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument, or representation offered by or on the Defendant's behalf. The Defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI.   APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A.   <u>Discretionary Nature of Sentencing Guidelines</u>. The Defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG,"

"Sentencing Guidelines," or "Guidelines") in determining the Defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B.    Offense Level Calculations.

Counts 1 and 14: The parties stipulate to the following calculation of the Defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements, variances, or reductions under the Sentencing Guidelines:

| | |
|---|---|
| Base offense level (USSG §2B1.1(a)(2)) | 6 |
| Specific Offense Characteristics | |
| Loss Greater than $1,500,000, Less than $3,500,000 (USSG §2B1.1(b)(1)(I)) | +16 |
| Conviction under 18 U.S.C. § 1957 (USSG §2S1.1(b)(2)(A)) | +1 |
| **Adjusted Offense Level** | **23** |
| Acceptance (USSG §§ 3E1.1(a) and (b)) | (3) |
| **Total Offense Level** | **20** |

The Defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the Defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C.    Reduction of Offense Level for Acceptance of Responsibility. Under USSG § 3E1.1(a), the United States will recommend that the Defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty

plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG §3E1.1(b), if the Court determines that the Defendant's total offense level, before operation of § 3E1.1(a), is 16 or higher, and if the United States recommends a two-level downward adjustment pursuant to the preceding paragraph, the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the Defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

D.    Criminal History Category. The Defendant acknowledges that the Court may base its sentence in part on her criminal record or criminal history and that the Court will determine the Defendant's Criminal History Category under the Sentencing Guidelines.

E.    Relevant Conduct. The Court may consider all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F.    Additional Sentencing Information. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the Defendant's criminal conduct and any aggravating or

1   mitigating facts or circumstances. Good faith efforts to provide truthful information or to

2   correct factual misstatements shall not be grounds for the Defendant to withdraw her guilty

3   plea.

4        Except as elsewhere provided in this agreement, the parties agree that neither party

5   will argue for additional adjustments, enhancements, variances, or departures from the

6   Sentencing Guidelines range stipulated above. The Defendant acknowledges that the United

7   States Probation Office may calculate the Sentencing Guidelines differently and may rely on

8   additional information it obtains through its investigation. The Defendant also acknowledges

9   that the Court may rely on this and other additional information as it calculates the

10  Sentencing Guidelines range and/or makes other sentencing determinations as appropriate,

11  and that the Court's reliance on such information shall not be grounds for the Defendant to

12  withdraw her guilty plea.

**VII.   APPLICATION OF SENTENCING STATUTES**

A.   <u>Maximum Penalty</u>.

<u>Count 1</u>:  The maximum penalty for Conspiracy to Commit Health Care Fraud under

18 U.S.C. § 1349 is 10 years imprisonment, a fine of the greater of a) $250,000, or b) twice

the gross pecuniary gain from the offense, or c) twice the gross pecuniary loss from the

offense; or both.

<u>Count 14</u>:  The maximum penalty for Money Laundering under 18 U.S.C. § 1957 is

10 years imprisonment, a fine of up to $250,000 or up to twice the value of the laundered

property, or both.

B.   <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth

in 18 U.S.C. § 3553(a) in determining the Defendant's sentence. However, the statutory

maximum sentence and any statutory minimum sentence limit the Court's discretion in

determining the Defendant's sentence.

C.   Parole Abolished. The Defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

D.   Supervised Release. In addition to imprisonment and a fine, the Defendant will be subject to a term of supervised release not greater than three (3) years. 18 U.S.C. §§ 3559(a)(1) and 3583(b)(1)). Supervised release is a period of time after release from prison during which the Defendant will be subject to various restrictions and requirements. If the Defendant violates any condition of supervised release, the Court may order the Defendant's return to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum prison sentence.

E.   Special Assessment. The Defendant will pay a $100 special assessment per count at the time of sentencing.

## VIII.   RESTITUTION

In exchange for benefits received under this Plea Agreement, the Defendant agrees to make full restitution in the amount of $2,492,627.55 to the United States under 18 U.S.C. § 3663(a)(3), and to be paid joint and severally with his codefendant BELTRAN. The Defendant cannot discharge his restitution obligation through bankruptcy proceedings. The Defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## IX.   POSITIONS REGARDING SENTENCE

The parties agree that the Government will recommend a sentence at the low-end of the sentencing guideline range determined by the Court. The Defendant is free to argue for any lawful sentence under the 18 U.S.C. § 3553(a) factors. The parties agree to recommend

12

1 concurrent time with Superior Court of California, Riverside County, California Case No.

2 RIF1601642. The Defendant acknowledges that the Court does not have to follow this

3 recommendation. Notwithstanding its agreement to recommend that the Defendant be

4 sentenced at the low-end of the guideline range, the United States reserves its right to defend

5 any lawfully imposed sentence on appeal or in any post-conviction litigation.

6 **X.    FORFEITURE**

7 The defendant knowingly and voluntarily:

8 A.    Agrees to the District Court imposing the civil judicial forfeiture or the criminal

9 forfeiture of:

10 1. $10,000;

11 2. $10,000;

12 3. $20,000;

13 4. $30,000;

14 5. $29,026.78; and

15 6. $197,247.15

(all of which constitutes property);

16 B.    Agrees to the District Court imposing an in personam criminal forfeiture

17 money judgment of $2,492,627.55, not to be held jointly and severally liable with his

18 codefendant, the collected money judgment amount between the codefendants is not to

19 exceed $2,492,627.55, and that the property will be applied toward the payment of the money

20 judgment;

21 C.    Agrees the in personam criminal forfeiture money judgment amount complies

22 with *Honeycutt v. United States*, ___U.S.___, 137 S. Ct. 1626 (2017);

23

D.     Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property;

E.     Abandons or forfeits the property to the United States;

F.     Relinquishes all possessory rights, ownership rights, and all rights, titles, and interests in the property;

G.     Waives his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property and the in personam criminal forfeiture money judgment (proceedings);

H.     Waives service of process of any and all documents filed in this action or any proceedings concerning the property and the in personam criminal forfeiture money judgment arising from the facts and circumstances of this case;

I.     Waives any further notice to him, his agents, or his attorney regarding the abandonment or the forfeiture and disposition of the property;

J.     Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property and the in personam criminal forfeiture money judgment;

K.     Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, and 32.2, all constitutional requirements, including, but not limited to, the constitutional due process requirements of any proceedings concerning the property and the in personam criminal forfeiture money judgment;

L.     Waives his right to a jury trial on the forfeiture of the property;

M.     Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property and the in personam criminal forfeiture money judgment in any

14

proceedings, including, but not limited to, (1) constitutional or statutory double jeopardy defenses; and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

N.      Agrees to the entry of an Order of Forfeiture of the property and the in personam criminal forfeiture money judgment to the United States;

O.      Waives the right to appeal any Order of Forfeiture;

P.      Agrees the property is forfeited to the United States;

Q.      Agrees the in personam criminal forfeiture money judgment is immediately due and payable and is subject to immediate collection by the United States;

R.      Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property and the in personam criminal forfeiture money judgment shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture;

S.      Acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution; and

T.      Agrees to take all steps as requested by the United States to pass clear title of the property and of any forfeitable assets which may be used to satisfy the in personam criminal forfeiture money judgment to the United States and to testify truthfully in any judicial forfeiture proceedings. The defendant understands and agrees that the property and the in personam criminal forfeiture money judgment amount represent proceeds and/or facilitating property of illegal conduct and are forfeitable. The defendant acknowledges that failing to cooperate in full in either the forfeiture of the property or the disclosure of assets constitutes a breach of this Plea Agreement.

## XI.    FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, or upon request by the Court, the United States, or the Probation Office, the Defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets. The Defendant will release such funds and property under his control in order to pay any assessment and/or fine imposed by the Court.

## XII.    THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A.    <u>Plea Agreement and Decision to Plead Guilty</u>. The Defendant acknowledges that:

1.    He has read this Plea Agreement and understands its terms and conditions;

2.    He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

3.    He has discussed the terms of this Plea Agreement with his attorney;

4.    The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

5.    He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The Defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The Defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

16

B.      Waiver of Appeal and Post-Conviction Proceedings. The Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The Defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The Defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C.      Removal/Deportation Consequences. The Defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The Defendant has also been advised that if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The Defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The Defendant acknowledges that he has specifically discussed these removal/deportation consequences

17

with his attorney.

## XIII.   ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the Defendant, the Defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DAYLE ELIESON
United States Attorney

1/10/19
DATE

PATRICK BURNS
Assistant United States Attorney
Counsel for the United States of America

Jun 10, 2019
JAN 10, 2019
DATE

JEFFREY B. SETNESS, ESQ.
WILLIAM MCMURREY, ESQ.
Counsel for Defendant

Jan 10 2019
DATE

CAMILO Q. PRIMERO
Defendant

18